**Lisa STEGMAN, Appellant,**

v.

**GRAND RIVER REGIONAL AMBULANCE DISTRICT, Respondent;**

**North Kansas City Hospital, Respondent;**

**Physicians Acute Care Services, Inc. d/b/a Northwest Missouri Emergency Physicians, Respondent;**

**Missouri Rural Services Workers Compensation Insurance Trust, Respondent.**

**No. WD 69099.**

Missouri Court of Appeals, Western District.

Dec. 9, 2008.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 27, 2009.

Robert E. Douglass, St. Joseph, MO, for appellant.

Brian Gordon, Independence, MO, for respondent North Kansas City Hospital.

Paul D. Huck, Clayton, MO, for respondent Missouri Rural Services Workers Compensation Insurance Trust.

Before JAMES M. SMART, JR., LISA WHITE HARDWICK, and JAMES E. WELSH, JJ.

JAMES M. SMART, JR., Judge.

Lisa Stegman, who was employed as an emergency medical technician and paramedic for an ambulance district, appeals the Labor and Industrial Relations Commission's denial of her claim for workers' compensation benefits for injuries she suffered while responding to an emergency summons from her employer. We reverse and remand.

## Background

The Commission did not adopt specific findings of fact and conclusions of law. The ALJ's opinion, adopted by the Commission, with one commissioner dissenting, summarized *all* of the evidence, witness by witness, without attempting to place any of the testimony in an overall factual context or legal context, and without evaluation or comment as to relevance or credibility. The opinion then separately discussed possible legal theories in an abstract manner, extensively discussing authorities, but without relating any such theories to the facts or expressing the applicable approach. The closest that the opinion comes to any integration of fact and law occurs in the following few sentences in which the Commission, acknowledging that the claimant had been paged by her employer to respond to an emergency, focused on only one fact as having legal relevance—the fact that claimant was injured in her own garage:

Claimant had not commenced her travel from her home to the ambulance barn at the time of the injury. Claimant had not yet passed the 'portal' of her abode at the time she fell in her garage. Claimant's accident occurred prior to commencing the necessary prerequisite journey to the ambulance barn, where she would have met the crew and boarded the ambulance to respond to the scene of the emergency.

With this explanation, the Commission denied the claim. Ms. Stegman appeals.

## Standard of Review

 We are directed by precedent to review the Commission's decision in accordance with article V, section 18, of the Missouri Constitution and section 287.495, RSMo.[1] *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222 (Mo. banc 2003). Article V, section 18, provides for judicial review of the Commission's award to determine whether it is "supported by competent and substantial evidence upon the whole record." In *Hampton*, the Court concluded, based on that provision and section 287.495.1, that we need not view the evidence in the light most favorable to the Commission's award. 121 S.W.3d at 223. Rather, we consider the evidence in the context of the whole record to determine whether there is sufficient competent and substantial evidence to support the award or if the award is contrary to the overwhelming weight of the evidence. *Id.* at 222–23. We are not bound by and do not defer to the Commission's interpretation and application of the law. *Schoemehl v. Treas. of State*, 217 S.W.3d 900, 901 (Mo. banc 2007). When the facts pertinent to the issue on appeal are not in dispute, the issue is a question of law that is reviewed

1. Statutory references are to the Revised Statutes of Missouri 2000, except where otherwise noted.

*de novo. Cox v. Tyson Foods, Inc.*, 920 S.W.2d 534, 535 (Mo. banc 1996).

### Analysis

Ms. Stegman says the Commission erred in finding that her injury did not arise out of and in the course of her employment because there was not sufficient competent evidence to support the award. The evidence, she says, showed that she was performing the duties of her employment in responding to an emergency at the time of the injury in that her employment status changed from "on call" to "responding to a call" the moment her pager was activated, and she was hurrying to get to the ambulance barn in response to that page.

 "To be compensable under worker's compensation, an employee's injury must arise out of and in the course of his employment." *Custer v. Hartford Ins. Co.*, 174 S.W.3d 602, 610 (Mo.App.2005). This language is from section 287.120.1,[2] which states in pertinent part that

> [e]very employer subject to the provisions of this chapter shall be liable, irrespective of negligence, to furnish compensation under the provisions of this chapter for personal injury or death of the employee by accident *arising out of and in the course of the employee's employment* [.]

Generally, an injury "arises out of" the employment if it is a natural and reasonable incident thereof. *Custer*, 174 S.W.3d at 610. It is "in the course of employment" if the action occurs within a period of employment at a place where the employee may reasonably be fulfilling the duties of employment. *Id.* Both of these tests must be met before the employee is entitled to compensation. *Id.* In deciding whether an injury arises out of and in the course of employment, we consider the particular facts and circumstances of each case. *Id.*

 In its recitation of law, the Commission noted that "[i]n general, an employee does not suffer injury arising out of and in the course of employment if the employee is injured while going or journeying to or returning from the place of employment." This general principle is often referred to as the "going and coming rule." Though recognizing that this was only a general principle, the Commission seemed to accept the notion that it would apply in this instance. Then the Commission mentioned the "special errand" exception "whereby the employee performs a special task, service or errand in connection with his employment." *Id.* It then mentioned the "portal-to-portal" exception to the "special errand" exception to the "going and coming rule." Under that exception, the claim is not compensable unless the claimant's injury occurs between the time the claimant has crossed the "portal" of the claimant's own home (and reached the public thoroughfares) and the time the claimant has returned to the claimant's own home. *See, e.g., Charak v. Leddy*, 23 A.D.2d 437, 261 N.Y.S.2d 486, 487 (N.Y.App.Div.1965); 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law*, sec. 14.05(2) (2008).

Section 287.460.1 mandates that an award in a contested workers' compensation case be accompanied by findings of fact and conclusions of law. *Parrott v. HQ, Inc.*, 907 S.W.2d 236, 244 (Mo.App. 1995); Section 286.090. The Missouri Supreme Court has declared that such statutory requirements "contemplate an unequivocal affirmative finding" as to what the pertinent facts are. *Michler v. Krey Packing Co.*, 363 Mo. 707, 253 S.W.2d 136, 142 (1952).

---

**2.** Revised Statutes of Missouri, Cumulative Supplement 2005.

The factual findings are necessary so that we can "know what a decision means before the duty becomes ours to say whether it is right or wrong." *Martinez v. Nationwide Paper*, 168 S.W.3d 566, 570–71 (Mo.App.2005). The findings should be designed to show whether the basis of the decision was an issue of fact or a question of law. *Parrott*, 907 S.W.2d at 244 (*citing Michler*, 253 S.W.2d at 142). Without factual findings, it can be very difficult to ascertain why the Commission ruled as it did so that we can perform our duty of review under section 287.495. *Brown v. Sunshine Chevrolet GEO, Inc.*, 27 S.W.3d 880, 885 (Mo.App.2000).[3]

The Claimant suggests that the Commission seemed to rely on the "going and coming" principle and the "portal" rule. Claimant argues that if the Commission did so, such reliance was erroneous. Claimant argues that cases involving police officers and other emergency workers differ from other workers' compensation cases and are a special category. Claimant discusses *Spieler v. Village of Bel–Nor*, 62 S.W.3d 457, 460 (Mo.App.2001) (off-duty police officer awarded compensation for injury received while furnishing assistance to victims at the scene of an accident). In *Spieler*, the claimant notes, the court stated that "a discrete body of law has developed regarding workers' compensation for police officers." *Id.* Claimant also cites *King v. City of Clinton*, 343 S.W.2d 185, 186–89 (Mo.App.1961) (police officer compensated for injury caused by accidental discharge of police firearm while dressing for work).[4] Claimant contends that if those injuries were compensable, then her injury should be compensable, because she was on duty and in the course of her work at the time of the injury.

Claimant argues that valid public policy arguments support the same special treatment for emergency workers who are paid to respond immediately from their homes, and paid *while* responding immediately from their homes, to emergency summonses. Claimant says that the claims of such workers differ from those of non-emergency personnel who might be contacted at home by an employer while on call, for instance, during a weekend, and asked to come in to the office. When an *emergency* worker is summoned to drop everything to attend to an emergency, the argument goes, it is critical for that worker to respond as quickly as possible in hopes of saving lives and minimizing injuries. Claimant, along with John J. Hickey, the dissenting commissioner in this case, is asking whether the Commission's policy means that the emergency worker, upon receiving an emergency page, should avoid haste and proceed extra cautiously for her own protection, taking no risks.

While it seems that the Commission determined and believed that this case is

---

3. The Commission's opinion in this case is somewhat reminiscent of the Commission's decision in *Parrott v. HQ*, 907 S.W.2d at 244–45, where the court said:

> [The] Commission did not make unequivocal affirmative findings of fact as is mandated by section 287.460.1. Instead, it outlined and summarized the testimony of all witnesses appearing at trial, and then, without indicating what weight or credibility it gave to any of the evidence, [reached its conclusion].

See also *Loepke v. Opies Transport, Inc.*, 945 S.W.2d 655, 661 (Mo.App.1997) (overruled on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)) (court found that the "findings and conclusions" set out "in minimal, sketchy fashion a mix of facts and conclusions of law" that "barely avoid[ed] falling below the minimum required").

4. The Respondents seek to rely on *Parrott v. City of Perry*, 240 S.W.3d 735 (Mo.App.2007), a per curiam order and unpublished memorandum that lacks precedential value.

dispositively ruled by the mere fact that the claimant was in her garage at the time of the injury, the Commission was less than express as to the legal theory the Commission applied in this determination. The Commission apparently thought the claims of emergency responders are governed by the "going and coming rule," because it raised a question as to whether the facts would support trying to fit this incident within the "special errand exception" to the going and coming rule.[5]

▬ The Commission must fully develop and understand the pertinent facts to determine whether an injury arose "out of" and "in the course of" employment. Our cases, and sound reasoning, suggest that the analysis should commence with an understanding factually of the exact nature of the employment and the causal relation, if any, between the employment and the injury (as to whether the injury arose "out of" the employment), and whether there are pertinent facts that show that the employee at the time of the injury was at a location where the employee was required or permitted to be while reasonably fulfilling the duties of her employment (and thus "in the course of" employment). *See, e.g., Bear v. Anson Implement, Inc.,* 976 S.W.2d 553, 555 (Mo.App.1998); *Abel v. Mike Russell's Standard Serv.,* 924 S.W.2d 502, 503 (Mo. banc 1996).

▬ The "going and coming rule" is a judicially created rule of thumb that grows out of the common sense notion that we all must get around in our own homes, employed or not, and must all travel the streets and sidewalks to get anywhere we wish to go. There is no reason to believe the General Assembly, in adopting the Workers' Compensation Act, intended that the employer should be saddled with legal responsibility when a worker trips on the stairway leaving the house or is involved in a collision in traffic on the way to work. It is a common sense principle based on a sense of fairness and common sense in light of the statutory language. But, though the general principle is that such injuries are not compensable, the "going and coming" principle is not part of the statutory prescription. The statute provides that an injury will ordinarily be compensable if it arises "out of" and "in the course of" the employment. Rules of thumb do not override express statutory dictates. Therefore, the analysis of a claim cannot ignore the statutory language, and should not depart therefrom in favor of applying a rule of thumb except where there is a fact pattern to which, according to authority and reason, it should be applied. In this case, we cannot determine from the Commission's opinion whether the facts here would warrant compensation under an application of the express statutory language.

---

5. In the Missouri cases that have discussed the "special errand" exception (to the general rule that employees are not in the course of their employment when going to work or coming from work), the courts have stated that such exception has been held to apply when "an employee, having identifiable time and space limits on his employment, makes a journey which would normally fall under the going and coming rule, but invests substantial time, or suffers special inconvenience, hazard or urgency in making the journey under the particular circumstances so that it can be viewed as an integral part of the service itself." *See, e.g., Logan v. Phillips,* 891 S.W.2d 542, 544 (Mo.App.1995); *Hilton v. Pizza Hut,* 892 S.W.2d 625, 634 (Mo.App.1994) (overruled on other grounds by *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003)). Here, the Commission did not say whether injuries to emergency responders en route to the ambulance site would "normally fall under the going and coming rule." Also, the Commission did not expressly say whether emergency responders generally fit within a "special errand" exception to the "going and coming" rule.

Here, there are literally pages of testimony summarization. There are also pages of substantial discussion of abstract legal theory. The ALJ certainly diligently summarized all of the evidence as an impartial and uncritical scrivener. No doubt it was a useful reference tool for the ALJ's own use in understanding the facts. But because of the absence of findings (that is, the lack of critical evaluation and the failure to draw pertinent inferences from the evidence), the summaries, with all due respect, are of little value to this court. The summaries cannot substitute for factual findings (along with conclusions of law) in the opinion itself. When received in isolation, the neutrally written summaries constitute an invitation for us to exercise our own judgment in drawing inferences in order to make our own findings as to pertinent factual matters, which we are not permitted to do.

We need to know what the Commission actually found to be operative and significant as it reviewed the testimony. Here, there was evidence that employees are paid something to be on call, and then are paid at an enhanced rate when they respond to an emergency. But exactly how the employment worked here is subject to some factual interpretation because of seemingly contradictory testimony and conflicting arguments. For instance, we would like to know in this case whether the Commission believed that the claimant was to be paid at the enhanced rate from the *moment she got the page* at home (as *she* argues the evidence shows), or whether such pay was not to begin until after she arrived and clocked in at the ambulance barn (as *the employer* suggests the evidence shows). Also, it appears that the district may have customarily summoned more people than were generally needed for emergencies. We wonder if the Commission thought that a page amounted to merely an opportunity or invitation to respond, or whether the Commission saw it as a *demand* to instantly respond—a summons that must be strictly obeyed by the worker.

We do not know why the Commission thought these on-call emergency responders should be governed by the "going and coming rule" as though they were typical of other workers. Did the Commission believe that the "going and coming rule" was tantamount to a statutory mandate, applicable to every employee of every stripe? Or did the Commission focus on facts that indicated that the general rule was applicable here, though not necessarily to every emergency responder? We also do not know why the Commission believed, or even if it did believe, that this was a *"special"* (as opposed to a routine or normal part of the job) errand. Thus, we have questions as to what the Commission thought generally of the law applicable to emergency responders, and as to what the Commission thought of the facts of this case as those facts relate to principles applicable to emergency responders generally.

Here the Commission, without making findings pertinent to an understanding of how this employment worked, saw as dispositive one fact only: *that the Claimant had not left her house at the time of the injury.* Because we do not know how the Commission understood the nature of this employment and how the Commission understood the applicable legal theory, we are left with questions unanswered. The Claimant's arguments are interesting, but we cannot deal with them effectively without understanding the pertinent facts the Commission found were part of this employment. We must vacate the award and remand the matter to the Commission for findings of fact and conclusions of law and any other proceedings not inconsistent with this decision.

## Conclusion

For the foregoing reasons, the judgment is vacated, and the case is remanded to the Commission for further proceedings in accordance with this opinion.

All concur.