703 A.2d 944

ROBERT MANNES, PLAINTIFF-APPELLANT, v. CANDACE
HEALEY, DEFENDANT, AND LIBERTY MORTGAGE
COMPANY, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued October 6, 1997—Decided December 2, 1997.

Before Judges HAVEY, NEWMAN and COLLESTER.

*Michael Ventura* argued the cause for appellant (*Ventura & Miesowitz*, attorneys; *Mr. Ventura*, of counsel; *Maria Blancato*, on the brief).

*Linda A. Olsen* argued the cause for respondent (*Harwood Lloyd*, attorneys; *Ms. Olsen*, of counsel and on the brief).

The opinion of the court was delivered by

HAVEY, P.J.A.D.

In this personal injury action, plaintiff was struck by a vehicle owned and operated by defendant Candace Healey while Healey was travelling from her home to her part-time job with defendant Liberty Mortgage Company (Liberty). Judge Oles, in the Law Division, granted summary judgment in Liberty's favor,

concluding that Healey was not acting within the course of her employment with Liberty at the time of the accident.[1] We affirm. We hold that generally an employee's commutation to and from work is not within the scope of employment for the purposes of imposing liability upon the employer for the negligence of the employee-driver.

Considering the evidentiary material in a light most favorable to plaintiff, see *Brill v. Guardian Life Ins. Co. of America*, 142 N.J. 520, 540, 666 A.2d 146 (1995), these are the facts. Healey was employed as a part-time loan officer with Liberty at its offices in Little Egg Harbor, Ocean County. She did not keep regular business hours. She had a key to the office and access to it at any time during the day or night. She often stopped at the Liberty office after its regular business hours to pick up rate sheets, application forms, or make photocopies and business calls.

The accident occurred at 8:30 p.m. while Healey was en route from her home to the Liberty office to pick up mortgage application forms. Plaintiff, a pedestrian, was struck by Healey's vehicle when it turned from Radio Road into the entrance of the Liberty office parking lot.

"Conduct is generally considered to be within the scope of employment if, 'it is of the kind [that the servant] is employed to perform; it occurs substantially within the authorized time and space limits; [and] it is actuated, at least in part, by a purpose to serve the master.' " *Di Cosala v. Kay*, 91 N.J. 159, 169, 450 A.2d 508 (1982) (quoting *Restatement (Second) of Agency*, § 228 (1957); *see also Abbamont v. Piscataway Tp. Bd. of Educ.*, 138 N.J. 405, 416, 650 A.2d 958 (1994)).

Most courts endorse the general rule that an employee driving his or her own vehicle to and from the employee's workplace is not within the scope of employment for the purpose of imposing vicarious liability upon the employer for the negligence of the

---

[1] Plaintiff settled his claim against Healey.

employee-driver. *Weaver v. United States Coast Guard,* 857 *F.Supp.* 539, 545 (S.D.Tex.1994), *aff'd,* 53 *F.*3d 1282 (5th Cir.1995); *Skinner v. Braum's Ice Cream Store,* 890 *P.*2d 922, 924 (Okla. 1995); *Logan v. Phillips,* 891 *S.W.*2d 542, 544 (Mo.Ct.App.1995); *Faverty v. McDonald's Restaurants of Oregon, Inc.,* 133 *Or.App.* 514, 892 *P.*2d 703, 708 (1995); *Dillman v. Great Dane Trailers, Inc.,* 649 *N.E.*2d 665, 667 (Ind.Ct.App.1995); *Vaughan v. Hair,* 645 *So.*2d 1177, 1179 (La.Ct.App.1994), *cert. denied,* 650 *So.*2d 1186 (1995); *Kimball v. United States,* 262 *F.Supp.* 509, 513 (D.N.J. 1967); *see also* cases cited by Christopher Vaeth, Annotation, *Employer's Liability for Negligence of Employee in Driving His or Her Own Automobile,* 27 *ALR* 5th §§ 2, 3 at 218–38 (1995). This general rule is sometimes ascribed to the theory that employment is suspended from the time the employee leaves the workplace until he or she returns, or that in traveling to and from work, the employee is not rendering service to the employer. *Hinman v. Westinghouse Elec. Co.,* 2 *Cal.*3d 956, 88 *Cal.Rptr.* 188, 190–91, 471 *P.*2d 988, 990–91 (1970). Other courts focus on the fact that, while the commute is work motivated, the element of "control" by the employer is lacking. *Jones v. Blair,* 387 *N.W.*2d 349, 355 (Iowa 1986); *Logan, supra,* 891 *S.W.*2d at 545.

■ There are several recognized exceptions to this general rule, none of which apply here. For example, courts have imposed *respondeat superior* liability upon the employer when the employee is engaged in a special errand or mission. *Chevron v. Lee,* 847 *S.W.*2d 354, 356 (Tex.Ct.App.1993); *Studebaker v. Nettie's Flower Garden, Inc.,* 842 *S.W.*2d 227, 229 (Mo.Ct.App.1992); *Burger Chef Sys. v. Govro,* 407 *F.*2d 921, 927 (8th Cir.1969). Another exception is where an employer requires the employee to drive his or her vehicle to work so that the vehicle is available for use in fulfilling the employee's work-related responsibilities. *Oaks v. Connors,* 339 *Md.* 24, 660 *A.*2d 423, 426–27 (1995). As a corollary to this rule, an employer may be held liable if the employee is "on call" and is involved in an accident while travelling to a work site in

response to an employer's request for his service.  *Evington v. Forbes*, 742 *F*.2d 834, 836–37 (4th Cir.1984).

Here, the general rule applies.  Healey was simply driving from her home to the Liberty office to obtain mortgage application forms.  The fact that Healey was on her way to the office to perform some work-related duty is not sufficient in and of itself to constitute a mission undertaken on Liberty's behalf.  Further, the commute was not controlled by Liberty.  Healey was operating her own car;  Liberty did not dictate the manner by which Healey operated it, the route of travel, or when she chose to commute to the Liberty office for work-related purposes.

The thrust of plaintiff's argument is that the general rule should apply only to "nine to five" employees, "whose services do not begin until they arrive at work and end when they leave to go home."  Plaintiff reasons that because of the undefined and flexible nature of the time and space parameters of Healey's employment, she acts within the course of her employment with Liberty any time she commutes to the office to perform a work-related task before travelling "to other locations."  We disagree.

The fact that Healey commutes to and from the Liberty office at her convenience renders the commute no more work-connected than if she had been a "nine to five" employee.  That Liberty may have benefitted from the flexibility of Healey's work schedule is not dispositive.  Indeed, the flexible work schedule inured more to her benefit than to the benefit of her employer.  Moreover, Healey's varying hours and unrestricted access to the Liberty office underscores the absence of control by Liberty as to the manner by which she chose to carry out her work-related tasks.

Plaintiff also points to the fact that the accident occurred at the entrance to Liberty's parking lot, and cites *Livingstone v. Abraham & Straus, Inc.*, 111 *N.J.* 89, 543 *A*.2d 45 (1988), for the proposition that liability should be imposed against Liberty because Healey had reached her "place of employment."

*Livingstone* is a workers' compensation case.  Under *N.J.S.A.* 34:15–7, compensation is allowed when an employee is injured in

an accident "arising out of and in the course of employment." In *Livingstone*, an employee had parked her vehicle in a far corner of a shopping mall parking lot designated for Abraham & Straus employees. *Id.* at 91, 543 *A.*2d 45. While walking from her car to the employee entrance, she was struck by a car and sustained injuries. *Ibid.* The Court was called upon to interpret *N.J.S.A.* 34:15–36, added to the Workers' Compensation Act by *P.L.* 1979, c. 283 § 12, which provides in pertinent part as follows:

> Employment shall be deemed to commence when *an employee arrives at the employer's place of employment* to report for work and shall terminate when the employee leaves the employer's place of employment, *excluding areas not under the control of the employer....*
>
> . [Emphasis added.]

The Court found that petitioner's injury was compensable because she had arrived at her "employer's place of employment." *Livingstone, supra,* 111 *N.J.* at 104, 543 *A.*2d 45. Although the employer did not own the parking lot, the employee-designated portion of the lot where petitioner had parked "was under the control of" Abraham & Straus, first because the designated area of the lot was used by the employees in the conduct of its business, and petitioner's accident "arose out of a risk incidental to [her] employment." *Ibid.* Second, by requiring its employees to park in a distant section of the lot in order that customers can enjoy the convenience of parking adjacent to the store, Abraham & Straus caused petitioner to be "exposed to an added hazard ... in order to enhance its business interests." *Id.* at 105–06, 543 *A.*2d 45. *Cf. Novis v. Rosenbluth Travel,* 138 *N.J.* 92, 96, 649 *A.*2d 69 (1994) (holding that employee had not arrived at "employer's place of employment" when employer exercised no control over parking lot where petitioner fell).

*Livingstone* is clearly distinguishable because it defines the parameters of the "employer's place of employment" in the context of the Workers' Compensation Act, and endorses a flexible case-by-case analysis of the concept of "control" in a manner consistent with the remedial purposes and spirit of the Act. 111 *N.J.* at 102–05, 543 *A.*2d 45. No New Jersey case has equated the

tort concept "within the scope of employment" with the workers' compensation concept of "arising out of and in the course of employment." As stated, the latter is applied in such a way as to effect the humane purposes of the Workers' Compensation Act in providing compensation to injured employees. *See Sheffield v. Schering Plough Corp.*, 146 *N.J.* 442, 461, 680 *A*.2d 750 (1996). The former involves application of the *Restatement (Second) of Agency § 228* criteria in deciding whether an employer is liable for the injuries to a third party caused by the negligence of the employee. *See Government Employees Ins. Co. v. United States*, 678 *F.Supp.* 454, 456 (D.N.J.1988) (holding that the New Jersey workers' compensation cases do not govern the scope of employment doctrine for purposes of *respondeat superior* liability).

Consequently, it is of no legal significance here that the accident occurred at the entrance of the Liberty parking lot. Healey's turn into the entrance was merely the tail end of her commute to the Liberty office, and therefore did not fall within the course of her employment.

Affirmed.