ESTATE Salek E BEIM; Claire Beim, his wife; Leasing Service of America, Appellants,

v.

David HIRSCH; Helen Hirsch, (His wife); J.H. Closeouts Inc; Patricia Gough; Manufacturers Hanover Trust; Chemical Bank; Chase Manhattan Bank, ABC Corp. 1–10 (fictitous entities); XYZ Corps 1–10 (fictitous entities); John Does (fictitious persons).

No. 04–1408.

United States Court of Appeals, Third Circuit.

Argued Jan. 26, 2005.

Decided Feb. 11, 2005.

William J. Courtney, Jeffrey J. Mahoney [Argued], Flemington, NJ, for Appellants.

James H. Forte, Saiber, Schlesinger, Satz & Goldstein, Newark, NJ, for Appellee.

Before SCIRICA, Chief Judge, RENDELL and FISHER, Circuit Judges.

## OPINION OF THE COURT

RENDELL, Circuit Judge.

Appellants are investors who lost money in what was essentially a check-kiting scheme perpetrated by Defendant David Hirsch. Appellants brought this action against, *inter alia,* Patricia Gough, Manufacturers Hanover Trust Company ("MHT"), and MHT's successors in interest: Chemical Bank, the Chase Manhattan Bank, and Appellee J.P. Morgan Chase Bank ("Chase"), when it was learned that Gough, an Assistant Vice President at MHT, had assisted Hirsch in his fraudulent scheme. In her capacity as an employee of MHT, Gough allegedly made false representations to Appellants regarding the sufficiency of funds in Hirsch's bank accounts, executed official cashier's checks drawn on Hirsch's accounts, and concealed overdrafts on Hirsch's accounts. On the issue of whether Chase was vicariously liable for Gough's conduct, the District Court granted summary judgment to Chase, concluding that Gough's actions constituted criminal aiding and abetting and were not sufficiently motivated by the interests of her employer to establish vicarious liability. On appeal, Appellants principally argue that the District Court erred in ruling that they had not raised a genuine issue of material fact as to whether MHT could be held vicariously liable for Gough's conduct.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction over this appeal of a final judgment and order by the District Court pursuant to 28 U.S.C. § 1291. Because we agree that Appellants failed in their burden of raising a genuine issue of material fact as to whether Gough's conduct could be said to be within the scope of her employment so that MHT could be held vicariously liable for Gough's conduct, we will affirm the District Court's order.

## I.

As we write solely for the parties, and the facts are known to them, we will dis-

cuss only those facts pertinent to this appeal. Although Hirsch's scheme ostensibly involved "Factoring Agreements," wherein he sold accounts receivable for goods allegedly sold by his company, J.H. Closeouts, Hirsch was really engaging in short-term loans in which he agreed to repay the amount his investors gave him along with a "discount fee," *i.e.*, interest. The fraud was that J.H. Closeouts had no inventory and sold no goods. Hirsch's only apparent source of money to repay the loans he received in addition to the interest he promised was the money he received from other investors. At root, therefore, this was a classic check-kiting scheme; Hirsch was purporting to pay his investors with checks drawn on accounts with insufficient funds, and he attempted to replenish the accounts with insufficient funds with bad checks drawn on other accounts with insufficient funds.

To keep the scheme going, at the time he was to repay an investor's loan, Hirsch would often present the investor with the profit due and a cashier's check for the initial investment, but convince the investor to "reinvest" the check. Appellants were presented with a number of official MHT checks signed by Gough, and, in order to verify that the funds were available, Hirsch would call Gough and put Appellants on the phone or Appellants would independently call Gough and she would affirmatively state that Hirsch's checks were always honored, that sufficient funds were "always available" to cover his checks, that money was coming into his accounts on a daily basis, that the bank would honor any of his checks, and that Hirsch had an excellent relationship with the bank. Beim stated that he also spoke to other MHT employees who made similar representations, allegedly at the instruction of Gough. Appellants allege that due to Gough's representations regarding Hirsch's financial situation, they continued to invest with Hirsch, whereas if they had been apprised of Hirsch's actual financial situation, they would have discontinued their involvement with him and effectively mitigated their loss.

When Gough was questioned at her deposition regarding her responsibilities and any specific assignments that she carried out while she was at MHT, she invoked her constitutional right against self-incrimination. Hirsch pled guilty to criminal offenses and in his plea allocution, implicated a female MHT employee who helped him overdraw money from numerous accounts. In the allocution, Hirsch also stated, "[t]o show my appreciation to the bank officer for assisting me, I gave her various gifts, including airplane tickets, hotel accommodations and consumer gifts totaling a value of approximately $7,000." (Tr. of Hirsch Plea Allocution, app. at 0754.) The parties do not dispute that this employee was Patricia Gough.

The District Court granted summary judgment to Chase on Appellants' claims for fraud and negligent misrepresentation. As to the issue of whether Chase was vicariously liable for Gough's acts, the Court noted that under New Jersey law, vicarious liability would attach only where an employee was acting within the scope of her employment. To determine whether an employee was acting within the scope of employment, New Jersey courts apply the Second Restatement of Agency test:

(1) Conduct of a servant is within the scope of employment if, but only if:

(a) it is of the kind he is employed to perform;

(b) it occurs substantially within the authorized time and space limits;

(c) it is actuated, at least in part, by a purpose to serve the master, and

(d) if force is intentionally used by the servant against another, the use of

force is not unexpectable by the master.

(2) Conduct of a servant is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master.

Restatement (Second) of Agency § 228; *see also DiCosala v. Kay*, 91 N.J. 159, 169, 450 A.2d 508 (1982); *Roach v. TRW, Inc.*, 320 N.J.Super. 558, 571, 727 A.2d 1055 (App.Div.1999); *Mannes*, 306 N.J.Super. at 353, 703 A.2d 944. Applying this test, the District Court found that the first element, *i.e.*, that Gough's conduct was of the kind that she was employed to perform, was met because the trier of fact could conclude that Gough was authorized to write cashier's checks drawn on a customer's account and provide payee Appellants with assurances that the checks would be honored by the bank. The Court also found that the second element, *i.e.*, that Gough's conduct occurred substantially within the authorized time and space limits, was met as this was not disputed by the parties.

Regarding the third element of the Restatement test, the District Court noted that vicarious liability could not be established where an employee's conduct "would be 'outrageously criminal' and 'not in any sense in the service of the employer's interest.'" *Gotthelf v. Prop. Mgmt. Sys., Inc.*, 189 N.J.Super. 237, 241–42, 459 A.2d 1198 (1983) (quoting *Roth v. First Nat'l State Bank of N.J.*, 169 N.J.Super. 280, 287, 404 A.2d 1182 (App.Div.1979)). Furthermore, the Restatement included an illustration analogous to the present matter: "A, paying teller in the P bank, knowingly misrepresents to T the solvency of a debtor of the P bank. Upon the strength of this T advances money to such debtor. The P bank is not liable in deceit." Re-

statement (Second) of Agency § 258 cmt. b, illus. 5. Because Hirsch's conduct was criminal and there was no dispute that Gough assisted Hirsch in his check-kiting scheme, the Court found that Gough was intentionally and criminally aiding and abetting Hirsch by · concealing his overdrafts and misrepresenting the condition of his overdrawn accounts, and Gough's conduct was in no way in furtherance of MHT's interests. The fact that Gough received approximately $7,000 in gifts from Hirsch was additional evidence that Gough's illegal conduct was entirely in furtherance of her own personal interests. Accordingly, the third element of the Restatement test was not met, and, therefore, Chase could not be held vicariously liable for Gough's conduct.

## II.

We exercise plenary review over the District Court's grant of summary judgment, applying the same test as the District Court. *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976). To affirm the grant of summary judgment, we must be convinced that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law when the facts are viewed in the light most favorable to the non-moving party. Fed.R.Civ.P. 56(c). The initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact; " 'the burden on the moving party may be discharged by "showing"— that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir.2001) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The burden then shifts to the

nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.* at 249.

### III.

As noted above, the principal issue on appeal is the District Court's application of the Restatement's scope of employment test to determine whether Chase can be held vicariously liable for Gough's conduct. We agree with the District Court's analysis of the first two elements of this test. Viewed in the light most favorable to Appellants as the nonmoving parties, we believe there is sufficient evidence in the record regarding Gough's employment responsibilities that a trier of fact could conclude that Gough was authorized to write cashier's checks drawn on a customer's account and that she was authorized to make assurances that checks would be honored by the bank. Furthermore, as the District Court pointed out, the parties do not dispute that Gough's conduct occurred substantially within the authorized time and space limits.

This case, then, comes down to whether Appellants have adduced evidence demonstrating that there is a genuine issue for trial on the third element of the test, *i.e.,* whether Gough's conduct was actuated, at least in part, by a purpose to serve MHT. Because we believe Appellants have failed in their burden, we will affirm the District Court's order.

The issue of whether Gough's conduct was actuated by a purpose to serve MHT is, fundamentally, a question of Gough's motivation. The best evidence of this would be Gough's own testimony; however, because she has invoked her right against self-incrimination, such evidence is unavailable. In the absence of Gough's own explanation for her actions, there is nothing in the record to which Appellants have pointed to fulfill their burden of proving that Gough's conduct was actuated by a purpose to serve MHT. Appellants assert that although Gough did not testify as to her participation in Hirsch's scheme, she did testify that she had only a "customer relationship" with Hirsch and that she had no personal dealings with him. The basis of Gough's relationship with Hirsch does not, however, bear on her motivation in helping him. The same is true with respect to the questions Gough refused to answer. Her refusal to answer questions regarding the scope of her employment does not, as Appellants argue, give rise to any inference regarding her motivation. Indeed, the most immediate inference one could make from her silence is that she had a self-interest in not disclosing any information regarding her acts or their motivation. But, this does not shed any light on what her motivation actually was. Furthermore, the testimony and assertions that Gough was extraordinarily trustworthy and competent and a long-time, loyal employee also do not prove that Gough acted out of a desire to benefit MHT. At most, this evidence shows that Gough's involvement in Hirsch's scheme may have been out of character, but it does not offer any explanation as to why she did what she did.

On the other hand, as the District Court found, Gough's receipt of approximately $7,000 in gifts from Hirsch was persuasive evidence that Gough's conduct was motivated by self-interest. Hirsch also stated in his deposition that Gough told him she was attempting to cover his overdrafts with her relatives' and her own money because her "ass [wa]s on the line,"

(Hirsch Dep., app. at 0881), further evidence that Gough was acting out of self-interest rather than a purpose to serve MHT.

In light of the absence of evidence available to prove that Gough's conduct was actuated by a purpose to serve MHT, we conclude that Appellants have failed in their burden to point to specific facts showing a genuine issue for trial.[1]

## IV.

Accordingly, we will AFFIRM the District Court's order.

---

**1.** Appellants also challenge the District Court's calculation of damages and denial of punitive damages, but we find no error in the District Court's findings and conclusions and will, therefore, affirm this aspect of the District Court's ruling as well.